IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHEAL N.B. ATTAWAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-2757-MAB |
| | ) |
| **FRED CHINN,** | ) |
| | ) |
| **Defendant.** | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Fred Chinn's motion for summary judgment on the issue of exhaustion (Doc. 72; *see also* Doc. 73). For the reasons explained below, the motion is granted.

## BACKGROUND

Plaintiff Micheal Attaway filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations that occurred sometime between June 14, 2022, and December 20, 2022, when he was detained at the Crawford County Jail (Doc. 18, p. 1; *see also* Doc. 12 (amended complaint)). Specifically, Plaintiff alleges that at some point in the latter half of 2022, he was put in a 10ft x 10ft padded cell, where he remained for 14 days, because Jail officials erroneously believed he was suicidal (Doc. 12, p. 6). He alleges that he was kept in the cell around the clock, deprived of nearly all his personal property, and could not associate with other prisoners, use the phone, or even watch TV (*Id.* at pp. 6, 7). After 10 days in the padded cell, Plaintiff went on a hunger strike, which

lasted four days (*Id.*). He missed twelve consecutive meals and three evening snacks before Jail Administrator Chin responded to his request to be removed from the padded cell (*Id.*). Plaintiff was then put in a single man cell for approximately 90 days until he finally received a cellmate (*Id.*).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims against Jail Administrator Fred Chinn:

> **Count 1:** Fourteenth Amendment due process claim for punishing Plaintiff with placement in isolation without notice of any rule violation or a hearing regarding the same.
>
> **Count 2:** Fourteenth Amendment claim for failing to timely intervene to stop Plaintiff's hunger strike and protect him from self-harm.

(Doc. 18).

On April 19, 2024, Defendant Chinn filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing suit (Doc. 72; *see also* Doc. 73). Defendant contends that Plaintiff filed only one grievance relevant to Count 1, and he failed to pursue it past the first level of the grievance process (Doc. 73, p. 6). Defendant further contends that Plaintiff did not file any grievances that cover his claim in Count 2 (*Id.*).

Plaintiff filed his response in opposition just five days later (Doc. 76). He did not directly address any of the facts or arguments asserted by Defendant (*see id.*). Instead, he primarily contended that he was unable to submit *any* grievances related to the claims in this lawsuit because there were "technical glitches" every time he tried to electronically

submit a grievance using the tablets at the Jail, and he was told there were no paper grievances available (*see id.*).

Defendant filed a reply brief on April 29, 2024, arguing that Plaintiff's allegation about "technical glitches" preventing him from electronically submitting grievances via the tablet was demonstrably untrue (Doc. 77; Doc. 77-1). Defendant also pointed out that, "[a]side from [Plaintiff's] false claim about 'technical glitches,'" Plaintiff had no direct response to the motion for summary judgment and did not dispute that a grievance response was hand-delivered to him, but he failed to appeal it (Doc. 77, p. 3).

After Defendant filed his reply brief, Plaintiff inundated the Court with filings. Plaintiff filed a motion indicating that he never received a full copy of Defendant's motion for summary judgment, which made it "virtually impossible" for him to respond (Doc. 78)—in spite of the fact that he already filed his response brief (Doc. 76). Two days later, Plaintiff asked the Court to set a *Pavey* hearing because he said that was the only way to resolve the parties' differing stories as to whether he exhausted his administrative remedies (Doc. 79). He also reiterated that he had never received a full copy of Defendant's brief and exhibits, which was the only reason that he did not directly address Defendant's arguments (*Id.*). Four days later, he refiled the exact same motion (Doc. 80), as well as a sur-reply to the motion for summary judgment (Doc. 81), and a motion asking the Court to strike Defendant's reply brief and the affidavits that Defendant Chinn filed in support of the motion for summary judgment (Doc. 82). Plaintiff then filed two motions about subpoenaing security footage from the Crawford County Jail (Docs. 84, 85). And finally, Plaintiff filed a "declaration," making additional and new arguments in

opposition to the motion for summary judgment (Doc. 92). The Court recently addressed this slew of motions, (*see* Doc. 94), and now turns to Defendant's motion seeking summary judgment on the issue of exhaustion.

## LEGAL STANDARD

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). When a prisoner does not raise sufficient factual allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing is necessary. *Jackson v. Esser*,

105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318). Here, as explained in detail below, there are no material issues of fact that require a hearing to resolve.

## DISCUSSION

The Prison Litigation Reform Act, which applies to both pretrial detainees and convicted prisoners alike, *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015), provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order to properly exhaust their administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). However, an inmate is required to exhaust only those administrative remedies that are available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies become "unavailable" when, for example, prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Pyles*, 829 F.3d at 864; *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.**

### A. PLAINTIFF'S RESPONSIVE MATERIALS

The Court must, as an initial matter, address Plaintiff's submissions in opposition to Defendant's motion for summary judgment. Parties cannot simply make arguments in

a piecemeal fashion to the Court as it runs counter to the orderly schedule of briefing established by the Local Rules. It is also unduly burdensome for the Court to sort through multiple documents in order to piece together a party's entire argument. The Court must therefore hold Plaintiff to the response that he filed, meaning the document formally designated as Plaintiff's response to the motion for summary judgment at docket entry 76. The Court will not consider any of the arguments or assertions of fact contained in Plaintiff's many other submissions (*e.g.,* Docs. 78, 79, 80, 82, 84, 85, 92).

Plaintiff's response brief, as previously mentioned, was apparently filed before Plaintiff had ever seen Defendant's briefing in full. Plaintiff did not directly address—and more importantly did not deny or dispute—any of Defendant's assertions of material fact (*see* Doc. 76), in violation of Local Rule 56.1(b) and Federal Rule of Civil Procedure 56(c),[1] and despite Defendant warning him of the consequences of failing to do so (*see* Doc. 74). *See* Bryant v. *Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). *See also* SDIL-LR 56.1(j). Therefore, the facts asserted by Defendant are deemed admitted to the extent

---

[1] Local Rule 56.1(b) provides: "Briefs in opposition to a motion for summary judgment must contain a Response to Statement of Material Facts. The response shall contain corresponding paragraphs to the Statement of Material Facts that state whether the fact is: (1) admitted; (2) disputed; (3) admitted in part and disputed in part (specifying which part is admitted and which part is disputed); or (4) not supported by the record citation. The disputed facts, or parts of facts, shall contain specific citation(s) to the record, including page number(s), upon which the opposing party relies, where available." *See also* FED. R. CIV. P. 56(c)(1)(A) (a party disputing a fact must support their assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."); *Id.* at 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

they are supported by evidence (*see* Doc. 74). SDIL-LR 56.1(g) ("All material facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."); FED. R. CIV. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted).

As for Plaintiff's own assertions of fact in his response brief, they also violate Local Rule 56.1(b) and Federal Rule of Civil Procedure 56(c)(1)(a) and (c)(4) because they are not supported by a proper affidavit or unsworn declaration. It is true that Plaintiff attached an "Affidavit" to his response (Doc. 76, p. 7). That "affidavit" states as follows:

> I, Micheal N.B. Attaway, deposes and states that as to the document/petition herein: he is the plaintiff in the above entitled cause; that he has read the foregoing documents by his signed hand and that the statements contained therein are true in substance and in fact.

(Doc. 76, p. 7). That statement is followed by Plaintiff's signature and a notarial jurat that states "Signed before me this 7th day of March 2024" (*see id.*). The notary then signed the document and affixed her seal (*see id.*).

Although Plaintiff's document is titled as an "affidavit," it does not actually qualify as one because there is no indication that Plaintiff swore to (or affirmed) the truth of the statements in his response brief before the notary or that the notary administered an oath to Plaintiff (*see* Doc. 76, p. 7). *See Affidavit*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths."); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th

Cir. 1985) ("An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath (like a notary). Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury; only unsworn documents purporting to be affidavits may be rejected.") (internal citations omitted) (alteration added). *See also King v. Schieferdecker*, 498 Fed. App'x 576, 579 (7th Cir. 2012) (affirming affidavits were proper for summary judgment where "the affiants all state that before a notary they affirm and swear to the truth of their statements, which they make on personal knowledge"). Rather, the notary certified only that Plaintiff's signature is authentic. *See* 5 ILL. COMP. STAT. 312/6-105 (examples of short form jurats and distinguishing between verification upon oath and witnessing a signature); *see also Flowers v. Abex Corp.*, 580 F. Supp. 1230, 1233 (N.D. Ill. 1984) ("Merely notarizing the signature does not transform a letter into an affidavit.").

Plaintiff's document also does not qualify as an unsworn declaration, which can be used lieu of a traditional affidavit, because he did not certify "under penalty of perjury" that his statements were "true and correct." 28 U.S.C. § 1746. *See* FED. R. CIV. P. 56, Advisory Comm. Notes, 2010 Amendment, subdiv. (c) ("A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.").[2] Because Plaintiff's statements in his response brief were

---

[2] *See also Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 152 Fed. Appx. 317, 321 (4th Cir. 2005) (document with notarized signature did not amount to an unsworn declaration under 28 U.S.C. § 1746 because "[t]he notary's certificate simply means that the [witness's] signature is authentic. It is not a substitute for language indicating that the witness understood he risked prosecution for perjury if he gave false testimony."); *Latney v. Parker*, No. 2:17CV24, 2017 WL 7794573, at *3 (E.D. Va. July 20, 2017) (rejecting

neither sworn before a notary nor certified as true and correct under penalty of perjury, they cannot be used to oppose Defendant's motion for summary judgment.[3]

B. **UNDISPUTED FACTS**

The facts established by Defendant, which are deemed admitted and thus uncontested, are as follows: It is undisputed that the Crawford County Jail has a grievance procedure (Doc. 73-1; Doc. 73-2, pp. 23–24), and it is evident from Plaintiff's own submissions in this case that he was aware of the grievance procedure (*e.g.*, Doc. 76).

---

declarations submitted by plaintiff that were stamped by notary because declarants did not swear to their contents under penalty of perjury and there is no indication that the notary administered an oath to [them]"), *aff'd*, 707 Fed. Appx. 202 (4th Cir. 2017); *McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (same).

[3] *See Jajeh v. Cty. of Cook*, 678 F.3d 560, 567-8, nn. 3-4) (7th Cir. 2012) (leaving open whether district court properly excluded unsworn statement not subscribed under penalty of perjury but noting courts that have addressed the issue after 2010 amendment to Rule 56 "have continued to require that unsworn declarations comply with § 1746 in order to be used to support or oppose a motion for summary judgment"). *See also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 781 (6th Cir. 2024) (district court did not abuse its discretion in excluding unsworn declaration that was not verified under penalty of perjury); *Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022) (affirming rejection of unsworn statements at summary judgment because statements were not declared to be true or made under penalty of perjury); *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315–16 (3d Cir. 2019) (holding statement that was neither sworn nor given under the penalty of perjury was "incompetent summary judgment evidence"); *Zubrod v. Hoch*, 907 F.3d 568, 574 (8th Cir. 2018) ("We interpreted Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 as prohibiting a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury.") (citing *Banks v. Deere*, 829 F.3d 661, 667–68 (8th Cir. 2016); *Howell v. N.M. Dep't of Aging & Long Term Servs.*, 398 Fed. App'x. 355, 359 (10th Cir. 2010) (unpublished) (concluding an "unsigned document purportedly written by" a witness that was not in the form of an affidavit or unsworn declaration under 28 U.S.C. § 1746 "was not within the range of evidence that the district court could consider on summary judgment"). *Cf. In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (affirming rejection of unsworn statements that did not comply with 28 U.S.C. § 1746 and explaining "[i]nclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements."). *Contra Perry v. Mendoza*, 83 F.4th 313, 319 n.7 (5th Cir. 2023) (district court did not err in relying on summary judgment declaration that was unsigned and not made under penalty of perjury because declaration "was permissible under Federal Rule of Civil Procedure 56(c)(2) because it was 'capable of being presented in an admissible form.'") (citation omitted).

The grievance procedure provides that detainees must file a grievance within 48 hours of the event or condition giving rise to the grievance (Doc. 73-2, p. 24; *see also* Doc. 73-1, p. 2). Inmates turn in their grievance to the Jail Administrator via an electronic tablet, located in the inmate's cell or multi-purpose room (Doc. 73-2, pp. 23, 24; *see also* Doc. 73-1, p. 2). The Jail Administrator is then responsible for responding to a detainee's grievance within seven days of receiving it (Doc. 73-2, p. 24; *see also* Doc. 73-1, p. 2). If, after receiving the response, the inmate remains unsatisfied, they can appeal to the Chief Deputy and then appeal to the Sheriff (Doc. 73-2, p. 24; *see also* Doc. 73-1, p. 2). If the grievance is not resolved at the local level, detainees "may" submit a complaint to the Jail and Detention Standards Unit in Springfield, Illinois (Doc. 73-2, p. 24; *see also* Doc. 73-1, p. 2).

Records show Plaintiff submitted three grievances via the electronic tablet during the time period at issue: June 14, 2022, to December 21, 2022 (*see* Doc. 73-4; *see also* Doc. 73-3, para. 4). The only grievance relevant to the claims in this lawsuit is the grievance submitted on September 3, 2022, in which Plaintiff complained that he had been in the padded cell for 10 days and asked to be let out (Doc. 73-4, p. 3).

Defendant Chinn, the Jail Administrator, responded to Plaintiff's grievance in a typed letter dated September 6, 2022 (Doc. 73-4, p. 2). Chinn advised Plaintiff that the letter was his "Step 1" response to Plaintiff's grievance (*Id.*). Chinn also instructed Plaintiff, "[I]f you do not like my answer or response you will need to follow our Grievance procedure outlined in the Inmate Handbook." (*Id.*). Chinn made a note in the Jail Management System that he gave the typed letter to Cory Robbins, a former Correctional Officer at the Jail, on September 6, 2022, to give to Plaintiff (Doc. 73-5).

Robbins submitted a declaration in which he swore that as a correctional officer, he was required to obey direct orders from those above him in the chain of command and he did so, including any orders by a ranking officer to hand-deliver items to detainees in the Jail (Doc. 73-6, para. 2, 4, 5). There is no record of Plaintiff ever appealing Chinn's response to the Chief Deputy (*see* Doc. 73-4; *see also* Doc. 73-3, para. 13).

C. ANALYSIS

Defendant's undisputed facts show that the September 3, 2022, grievance—which is relevant to Count 1—was responded to by Defendant Chinn, and the response was hand-delivered to Plaintiff, but Plaintiff never appealed. The grievance was therefore unexhausted, which in turn makes Plaintiff's claim in Count 1 unexhausted. As for Count 2, the undisputed facts show that Plaintiff did not file a grievance about Defendant's Chinn's handling of Plaintiff's hunger strike (*see* Doc. 76), which means that Count 2 is also unexhausted.

Plaintiff's assertions of fact from his response brief are not enough to stave off summary judgment because, as explained above, Plaintiff failed to properly support them with a sworn affidavit, an unsworn declaration pursuant to 28 U.S.C. § 1746, or any other evidence in the record. *See* FED. R. CIV. P. 56(c). But even if the Court were to consider Plaintiff's statements, they do not create an issue of fact because they are contradicted by the documentary evidence in the case. Specifically, Plaintiff claims that due to technical glitches, he was unable to electronically submit *any* grievances related to the claims in this lawsuit (Doc. 76). However, the evidence shows that, while he was in the padded cell, he was able to log onto the tablet and submit a grievance related to the

claims in this case on September 3, 2022, (*see* Doc. 77-1; Doc. 73-4, p. 3).[4] He was also able to log onto the tablet on a couple other occasions during the time that he was held in the padded cell (*see* Doc. 77-1). Additionally, in the days immediately following his release from the padded cell, he logged on to the tablet every day, multiple times per day (*see* Doc. 77-1), and he also submitted a number of medical requests (*see* SDIL Case No. 23-cv-2771-JPG, Doc. 64-8, pp. 8–11);[5] Doc. 73-3, para. 11 ("The same tablet system used for submitting grievances is also used to submit medical requests.")). Thereafter and through the end of the year, Plaintiff continued logging on to the tablet multiple times per day (with the exception of only a couple days), and he submitted *numerous* medical requests and at least one additional grievance (Doc. 77-1; Doc. 73-4, p. 4; SDIL Case No. 23-cv-2771-JPG, Doc. 64-8, pp. 12–13, 16–22, 25, 27–28, 30–38, 40, 42–47, 49).

Plaintiff did not provide any details about the supposed unavailability of the grievance process, such as the dates on which he tried to electronically submit a grievance but was unable to and what the unsuccessful grievances said, or when he asked for a paper grievance for and who told him "no" (Doc. 76.).[6] Furthermore, there is no

---

[4] In the September 3, 2022, grievance, Plaintiff states that he has been in the padded cell for 10 days (Doc. 73-4, p. 3). That means Plaintiff was put in there on or about August. 24, 2022. It also means, based on his allegations in the complaint, that he remained in there until on or about September 7, 2022, and he was on a hunger strike from sometime on or about September 3rd to the 7th (*see* Doc. 12, pp. 6, 7).

[5] Defense counsel incorporated the records from case 23-cv-2771-JPG into the record here (Doc. 77, p. 2, n.1).

[6] *See Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (affirming summary judgment for failure to exhaust because although plaintiff said he was deterred from filing a grievance by "fear of reprisal," he provided no details as to what his fear was based on and no evidence to substantiate his claim). *But see Gooch v. Young*, 24 F.4th 624, 627, 628 (7th Cir. 2022) (reversing summary judgment where prisoner stated in an unsworn declaration under penalty of perjury that staff members at the prison refused to give him grievance forms or threatened to harm him if he filed a grievance and he identified the staff members, recounted their exact statements, and provided the dates on which those statements were made); *Lynch v.*

indication in any of Plaintiff's medical requests or the subsequent grievance that he submitted that he ever had trouble with the tablet or was thwarted from turning in a grievance. And Fred Chinn swore that Plaintiff never informed him of any issues with submitting grievances and he had no information indicating that the tablet system ever deleted any of Plaintiff's grievances, (Doc. 73-3, para. 6, 7), which Plaintiff did not contest (*see* Doc. 76). Simply put, Plaintiff's unsworn, generalized statements in his brief—which the record does not support—are insufficient to avoid summary judgment.

## CONCLUSION

Defendant Fred Chinn's motion for summary judgment on the issue of exhaustion (Doc. 72) is **GRANTED** and this action is **DISMISSED without prejudice.**

**IT IS SO ORDERED.**

**DATED: March 27, 2025**

s/ Mark A. Beatty

**MARK A. BEATTY
United States Magistrate Judge**

---

*Corizon, Inc.*, 764 Fed. Appx. 552, 554 (7th Cir. 2019) (holding prisoner's affidavit, which cited to events based on personal knowledge, was sufficient evidence to create a question as to whether administrative remedies were available to him, and the court was obligated to conduct an evidentiary hearing to resolve this fact dispute). *See also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) ("Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are "competent evidence to rebut [a] motion for summary judgment.") (quoting *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir.2004) (*per curiam* )).

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.